*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 7, 2020

v

No. 346529
Mason Circuit Court
LC No. 15-002928-FC

BENJAMIN MICHAEL BENTZ,

Defendant-Appellant.

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Following a *Ginther*[1] hearing, the trial court upheld defendant's conviction; he now appeals as of right. Defendant was tried before a jury and convicted of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a victim under 13 years old), and four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (penetration of a victim under 13 years old). Defendant was sentenced to 7 to 15 years' imprisonment for the CSC-II conviction and 25 to 75 years' imprisonment for the CSC-I conviction. The sentences for the CSC-I counts are to be served concurrently to each other and consecutively to the CSC-II sentence. This appeal is being decided without oral argument, pursuant to MCR 7.214(E)(1). We affirm.

## I. UNDERLYING FACTS

The underlying facts in this case were aptly summarized by this Court in *People v Bentz*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2016 (Docket No. 329016), p 1:

> Defendant's convictions arose from incidents that occurred between June 2012 and October 2013 involving the then eight- and nine-year-old victim. At trial, the victim testified to four incidents wherein defendant put his penis in her anus

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

and to one incident wherein defendant put his finger in her vagina. According to the victim, defendant threatened her to ensure that she kept the incidents a secret. Approximately a year after the final incident, the victim disclosed the incidents to her mother.

Doctor Debra Simms, a physician at DeVos Children's Hospital, testified as to her physical examination of the victim. She reported that her diagnosis was "probable pediatric sexual abuse" because, although the victim's physical examination was normal, the victim reported a "clear, consistent, detailed, [and] descriptive" history of sexual abuse to her medical assistants. On cross-examination, defense counsel elicited testimony from Dr. Simms acknowledging that it was possible, based on the victim's physical examination, that the victim was not abused. Similarly, Dr. Simms also testified, in response to defense counsel, that it was possible for children to lie about allegations of sexual abuse.

This Court affirmed defendant's convictions, *Bentz*, unpub op at 5, but our Supreme Court vacated this Court's opinion and remanded to the trial court for a *Ginther* hearing, *People v Bentz*, 501 Mich 1057, 1057; 909 NW2d 831 (2018).

At the *Ginther* hearing, defendant's trial attorney testified that he thought Dr. Simms's testimony bolstered the victim's credibility and that he considered objecting to it. Defense counsel chose not to object because he did not believe that the jury was paying attention to Dr. Simms's testimony and he did not want to draw attention to it by objecting. Furthermore, defense counsel wanted to flesh out Dr. Simms's testimony on cross-examination to destroy her credibility, and "the more things she was saying that were incredible, the more things [he] could get out of her" on cross-examination.

Additionally, defense counsel testified that he only wanted to point out major inconsistencies in the victim's prior statements and trial testimony because he believed that the jury would give the victim leeway regarding minor inconsistencies such as when the abuse occurred. Defense counsel also testified that "[y]ou don't want to necessarily destroy [a child witness in a sexual conduct case] the way you may a law enforcement witness, who's used to it." Defense counsel agreed that he was worried about the possible negative impact that it could have on his client if the victim became emotional while testifying. After the *Ginther* hearing, the trial court determined that defense counsel was not ineffective and upheld defendant's conviction. This appeal followed.

## II. ANALYSIS

"Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. . . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *Trakhtenberg*, 493 Mich at 56.

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defense counsel may decide, for example, "not to object to an obvious error" for "strategic reasons." *People v Randolph*, 502 Mich 1, 12; 917 NW2d 249 (2018). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" *Unger*, 278 Mich App at 242-243.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. [*Strickland*, 466 US at 689 (citation omitted).]

"Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential options that counsel had and the reasons for acting as he or she did. *Id*.

Furthermore, with regard to prejudice, as noted, to obtain a new trial on ineffective assistance grounds, a defendant must show that "there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014). (quotation marks and citation omitted). To meet this standard, a defendant does not have to show

that the evidence would have ensured acquittal, *id*., nor is a defendant even required to show that counsel's failure more likely than not altered the outcome, *Harrington v Richter*, 562 US 86, 112; 131 S Ct 770; 178 L Ed 2d 624 (2011). Nevertheless, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id*. "[W]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *Trakhtenberg*, 493 Mich at 56.

## A. EXPERT TESTIMONY

Defendant argues that the statements made by the victim to Dr. Simms's medical staff were inadmissible hearsay, and that counsel was thus ineffective for not objecting to them. We disagree.

"A statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is generally inadmissible hearsay. MRE 801(c); MRE 802. MRE 803(4), however, provides an exception to the general rule against the admissibility of hearsay for "[s]tatements made for the purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." MRE 803(4). Moreover, MRE 803(4) is not limited to the direct statements of a patient. See *People v Yost*, 278 Mich App 341, 362 n 2; 749 NW2d 753 (2008).

Statements made by a child victim of criminal sexual abuse to medical professionals describing abuse that could have led to injuries are within the parameters of MRE 803(4) and are rebuttably presumed to be truthful when the victim is over 10 years old. See *People v Crump*, 216 Mich App 210, 212; 549 NW2d 36 (1996). The fact that no physical injuries were discovered does not rebut the presumption because many injuries that occur as a result of sexual assault "are impossible to detect at first but still require diagnosis and treatment." *People v Garland*, 286 Mich App 1, 9-10; 777 NW2d 732 (2009). Moreover, "the identification of the assailant is necessary to adequate medical diagnosis and treatment." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992).

In this case, Dr. Simms testified that the victim was over 10 years old when Dr. Simms examined her. Therefore, the victim's statements to Dr. Simms's staff, including her identification of defendant, were rebuttably presumed to be truthful and necessary for the medical treatment of any potential injuries that may have arisen from the abuse. See *Meeboer*, 439 Mich at 322; *Garland*, 286 Mich App at 9-10; *Crump*, 216 Mich App at 212. Dr. Simms further testified that the victim's description of the abuse by defendant was necessary for Dr. Simms to determine what she should test for and how. Defendant failed to rebut the presumption that the victim's statements were truthful and necessary for medical treatment. Thus, the victim's statements were admissible under MRE 803(4). See *Crump*, 216 Mich App at 212. Moreover, the fact that Dr. Simms's staff relayed the victim's statements to the doctor does not affect the statements' admissibility under MRE 803(4), because the exception is not limited to statements made directly by the patient to the medical examiner. See *Yost*, 278 Mich App at 362 n 2. Consequently, defense counsel was not ineffective for failing to object, because the statements were in fact admissible. See *People v*

*Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007) ("Counsel is not ineffective for failing to make a futile objection.").

Defendant additionally argues that defense counsel was ineffective by failing to object to Dr. Simms's testimony that she diagnosed the victim with probable pediatric abuse, on the grounds that such testimony constituted improper vouching for the credibility of the victim. "[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). Credibility determinations are to be made by the jury, not another witness. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Expert testimony regarding "an examining physician's diagnosis of 'probable pediatric sexual abuse' " without physical findings constitutes improper vouching for the credibility of the victim. *People v Thorpe*, 504 Mich 230, 261-262; 934 NW2d 693 (2019). In *Thorpe*, the Michigan Supreme Court, applying the plain-error standard of review, held that the admission of such improper vouching testimony was plainly erroneous. *Id.* at 263-264. Similarly, in *People v Del Cid*, ___ Mich App ___. ___; ___ NW2d ___ (2019) (Docket No. 342402); slip op at 10-11, this Court recently held that even a diagnosis of "possible pediatric sexual abuse" is improper. As in *Thorpe*, the *Del Cid* Court found that admission of physician testimony of possible pediatric sexual abuse was plainly erroneous because it constituted improper vouching for the victim's credibility as a witness. *Id*.

In this case, Dr. Simms's testimony that she diagnosed the victim with probable pediatric sexual abuse on the basis of the victim's statements alone, without any physical evidence, constituted impermissible vouching for the credibility of the victim. See *Thorpe*, 504 Mich at 261-262; *Del Cid*, ___ Mich App at ___; slip op at 10-11. Although the admission of such testimony was an obvious error, under an ineffective assistance of counsel analysis,[2] defense counsel may choose not to object to impermissible testimony for reasonable strategic reasons without rendering deficient performance. *Randolph*, 502 Mich at 12. At the *Ginther* hearing, defense counsel testified that he considered objecting to Dr. Simms's testimony, but decided not to because he believed that the jury was not paying much attention to her testimony and he did not want to draw attention to it by objecting. This decision constituted sound trial strategy under the circumstances despite the obviously erroneous nature of the testimony. See *Strickland*, 466 US at 690-691 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable

---

[2] Defendant's only claim on appeal is that defense counsel was ineffective; he makes no argument that the trial court erred. Therefore, this issue is only properly evaluated under the standard for ineffective assistance of counsel claims, not the plain-error standard used to address unpreserved claims of trial court error. See *Randolph*, 502 Mich at 11-12, 16 (holding that an appellate court must not conflate the ineffective-assistance and plain-error standards because "the claims associated with each type of error have their own elements and require different analyses"). In *Thorpe*, the Supreme Court analyzed the improper vouching testimony under the plain-error standard. See *Thorpe*, 504 Mich at 261-266. Therefore, the Supreme Court's analysis in *Thorpe*, concluding that a new trial was warranted, is not applicable to this case. See *id.* at 264-266.

investigations or to make a reasonable decision that makes particular investigations unnecessary."); see also *Randolph*, 502 Mich at 12; *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Moreover, defense counsel also testified that he wanted to use Dr. Simms's objectionable testimony to discredit her on cross-examination. This was also a reasonably strategic reason to refrain from objecting to Dr. Simms's testimony. See *Randolph*, 502 Mich at 12.

Whether these strategies were successful or whether there were alternative strategies available is irrelevant because this Court must not use the benefit of hindsight nor substitute its own judgment of that of defense counsel. See *Unger*, 278 Mich App at 242-243. We note, however, that counsel did successfully elicit testimony that children could lie about allegations of sexual abuse, and that Dr. Simms had been unable to find any objective evidence capable of confirming or refuting the victim's statements. Thus, counsel clearly followed through on his strategy, and did so in an obviously competent manner. On the basis of defense counsel's *Ginther* hearing testimony and cross-examination at trial, the "strong presumption that counsel's performance constituted sound trial strategy" cannot be overcome. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Thus, defendant failed to carry the burden of his ineffective assistance of counsel claim to show that defense counsel's performance was objectively unreasonable. See *Unger*, 278 Mich App at 242-243.

## B. IMPEACHMENT OF VICTIM

Defendant also argues that defense counsel was ineffective by failing to impeach the victim for prior inconsistent statements regarding when the abuse occurred, how many times it occurred, and how long it lasted. Again we disagree.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). Failure to question a witness or to present certain evidence "only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A defendant has not been deprived of a substantial defense if a particular defense has been presented at trial through some alternative means. *Id.*

In this case, defense counsel testified at the *Ginther* hearing that he chose to only question the victim regarding "material" inconsistences in her story. Defense counsel stated that he chose not to challenge the victim regarding minor inconsistencies, such as when the abuse occurred, because he believed that the jury would give the victim leeway regarding minor details. Moreover, defense counsel testified that he did not want to push the child victim too hard and cause her to become emotional because such attacks against a child might be negatively perceived by a jury. Instead, defense counsel highlighted the victim's inconsistent statements regarding who was at the house on the night of each incident and where she reported feeling pain after the alleged abuse. Defense counsel also used the testimony of other witnesses to discredit the victim's account of events.

Because defense counsel was able, through the testimony of these other witnesses and some questions regarding the victim's prior inconsistent statements, to present the defense that the victim was lying in her testimony, defendant was not denied a substantial defense. See *Dixon*, 263 Mich

App at 398. Moreover, defense counsel's decision to only challenge the victim regarding major inconsistencies, rather than risk a negative perception from the jury by pushing too hard and challenging the victim on minor details, constituted a sound trial strategy under the circumstances. See *Garza*, 246 Mich App at 255. Whether defense counsel could have employed a different strategy when questioning the victim is irrelevant because this Court must not "substitute [its] judgment for that of counsel on matters of trial strategy." *Unger*, 278 Mich App at 242-243. Therefore, defense counsel's failure to question the victim regarding every minor inconsistent statement did not constitute ineffective assistance of counsel. See *id.*

## III. CONCLUSION

For the reasons stated, defendant's convictions are affirmed.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel