# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 14, 2016

Plaintiff-Appellee,

v

No. 325110
Wayne Circuit Court

SHAQUILLE DAI-SH GANDY-JOHNSON,

LC No. 14-007173-FH

Defendant-Appellant.

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of two counts of third-degree criminal sexual conduct (force or coercion to accomplish sexual penetration) (CSC-III), MCL 750.520d(1)(b). Because the prosecutor's comments during closing argument impermissibly shifted the burden of proof to defendant, thereby denying him a fair trial, we reverse and remand for a new trial.

This case arises from an alleged sexual assault. The prosecution's primary witness was the victim, JH, who testified that after she met up with defendant and his friend, Brandon Thompson, they all went back to an apartment on West Chicago. JH testified that after Thompson left the room, she and defendant began to kiss. But shortly thereafter, defendant became demanding and took JH's pants off against her will and forced her into having sex. Defendant did not testify and did not present any evidence.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel rendered ineffective assistance when he failed to request the jury instruction for a missing witness. Specifically, defendant claims that his trial counsel should have requested the CJI2d 5.12[1] instruction, which would have informed the jury that it could have inferred that the witness, Thompson, who did not testify at trial, would have testified unfavorably for the prosecution. We disagree.

---

[1] CJI2d 5.12 specifically states that "_____ is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case."

-1-

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews a trial court's findings of fact for clear error and reviews questions of constitutional law de novo. *Id*. The defendant must establish a factual predicate for the ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because no evidentiary hearing was held, our review is for errors apparent from the record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

To evaluate a claim of ineffective assistance of counsel, this Court uses the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Hoag*, 460 Mich at 5-6, citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). For a successful claim of ineffective assistance of counsel, the defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). Further, the defendant must overcome the presumption that defense counsel's alleged actions were simply sound trial strategy. *Trakhtenberg*, 493 Mich at 52. "[T]his Court will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *People v Rice* (*On Remand*), 235 Mich App 429, 445; 597 NW2d 843 (1999).

Pursuant to MCL 767.40a(1), the prosecutor "shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." MCL 767.40a(3) further provides that "[n]ot less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." "Once a witness is endorsed under MCL 767.40a(3), the prosecution must use due diligence to produce the witness." *People v Duenaz*, 306 Mich App 85, 104; 854 NW2d 531 (2014), citing *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). If the trial court determines that the prosecutor failed to exercise due diligence to produce an endorsed witness, "the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Eccles*, 260 Mich App at 388-389, citing CJI2d 5.12.

Defendant's claim that his trial counsel was ineffective when he did not request the CJI2d 5.12 instruction must fail because such a request would have been futile, as the prosecution never actually endorsed Thompson on its witness list. On the sole prosecution witness list included in the lower court file, Thompson is indeed listed as a potential witness in the case, but he was not denoted as an *endorsed* witness that the prosecution intended to produce at trial. The witness list states, "The witnesses the People intend to produce at trial, pursuant to MCLA 767.40a(3), are designated by an 'X' in the boxes to the left." But on the sheet, there is no mark next to

Thompson's name.[2]  Thus, without Thompson being an endorsed witness, the prosecution's failure to produce him at trial is not a ground for providing the jury with the CJI2d 5.12 instruction.  Consequently, any request for a missing witness instruction due to the prosecution's failure to produce a witness that it endorsed under MCL 767.40a(3) would have been futile, and counsel is not ineffective for failing to raise a futile objection or make a futile request.  See *Horn*, 279 Mich App at 42 n 5; *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## II.  PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed error by making comments in her closing argument that impermissibly shifted the burden of proof to him.  We agree.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial."  *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).  This Court "consider[s] issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments."  *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof."  *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010).  Further, "a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof."  *Id*. at 464, citing *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003).  Additionally, while prosecutors may "argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case," "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence."  *People v Unger*, 278 Mich App 210, 236, 241; 749 NW2d 272 (2008).

Defendant claims that the prosecutor impermissibly shifted the burden of proof to defendant when she made the following statements during her closing argument:

> Now, officer [Beckem] got up on the stand and told you that they looked for [Thompson].  We wanted to get a statement from [Thompson] but [he] is no where to be found.

---

[2] To be clear, this was not an instance where the prosecution simply forgot to mark any of its witnesses.  Indeed, of the ten entries on the list, only five of them were marked as being intended to be produced pursuant to MCL 767.40a(3).  If such a list had lacked any such marks, then that possibly would present a different question because, in that scenario, defense counsel may have reasonably assumed that all of the witnesses were intended to be endorsed under MCL 767.40a(3), despite the lack of any marks.  But we need not offer any opinion on that scenario.

Now you can make inferences and the Judge will tell you that there is inferences that can be made. [Thompson] is the only person that could say she is a liar. If he's [sic] so chose.

He's the only one [who] could say there's an independent witness. She . . . totally made that up story. She was fine. I came out that room[,] I took her home[,] and she was laughing and talking[.] [T]here was no crying[;] there was nothing wrong and she went home.

[Thompson] could potentially exonerate this defendant.

At this point, defense counsel objected because he thought that the prosecutor was attempting to shift the burden of proof to defendant for him "to prove something," and the prosecutor replied, "It's not shifting the burden[.] I'm talking about [Thompson.] I'm not talking about the defendant." After which, the trial court simply stated, "All right. Continue." The proceeding continued, as follows:

*[Prosecutor]*: But [Thompson] does not do that. [Thompson] leaves his friend out to dry, why? Because [Thompson] probably knows that she was upset and she was crying when he saw her.

Now you think about that.

*[Defense Counsel]*: Your Honor, this all assumes facts that are not in evidence. Brandon has not testified here.

*[Prosecutor]*: This is argument.

*[Defense Counsel]*: Pure speculation.

*[Prosecutor]*: It's argument.

*THE COURT*: Continue.

We agree with defendant that the prosecutor impermissibly attempted to shift the burden of proof to the defense. The clear implication from the prosecutor's statement is that Thompson's failure to testify was significant because if he could have contradicted the victim's testimony, then the defense would have called him to testify at trial. In other words, according to the prosecutor's argument, the defense's failure to produce evidence—i.e., the witness Thompson—can and should be viewed as proof that he committed the crime. The prosecutor's attempt to frame her comments as being directed at Thompson himself, instead of defendant, is unavailing. Obviously, Thompson cannot personally inject himself into the proceeding; one party must call him as a witness. And because the prosecutor was unable to locate Thompson and did not call him to testify, it unavoidably would fall to the defense to call Thompson as a witness. Thus, any comment about the failure of Thompson to testify necessarily implies that

-4-

defendant should have presented him as a witness, which qualifies as a comment regarding defendant's failure to present evidence. See *Fyda*, 288 Mich App at 464, *Abraham*, 256 Mich App at 273. Such a comment is not allowed, as it attempts to shift the burden of proof.[3]

Further, we do not believe that the court's instruction to the jury that the attorney's comments were not evidence were able to cure this defect. Notably, when defense counsel objected to the prosecutor's comments, the trial court merely instructed the prosecutor to continue. Thus, the clear impression the court gave was that the argument presented by the prosecutor was indeed permissible and that the jury *was allowed to infer that Thompson's failure to testify could be viewed against defendant*. As such, the later instruction that counsel's comments were only to be considered as argument and not as evidence does nothing address the harm that the comment caused.

Because there was virtually no corroborating physical evidence to support the rape allegations, the case essentially came down to whether the jury found JH credible. And because the prosecutor was allowed to argue that the jury could infer that JH was credible from the defense's failure to produce Thompson—coupled with the trial court's implicit approval of such an inference—we cannot conclude that the error was harmless. In other words, because it is not clear beyond a reasonable doubt that this constitutional error was harmless, reversal for a new trial is warranted. See *People v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005) ("A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.") (quotation marks, brackets, and citation omitted).

---

[3] We note that the present situation is distinguishable from other situations, where it is permissible for the prosecutor to comment on the lack of a defense's corroborating evidence. For instance, "when a defendant advances an alternate theory or alibi," the prosecution may comment on the nonproduction of corroborating alibi witnesses. *People v Fields*, 450 Mich 94, 112; 538 NW2d 356 (1995); see also *People v Spivey*, 202 Mich App 719, 351-352; 310 NW2d 238 (1981) ("It is well settled that a prosecutor is permitted to comment on a defendant's failure to produce 'corroborating' witnesses *whenever the defendant takes the stand and testified on his own behalf*.") (emphasis added).

But in the present case, the defense presented *no* evidence. Simply put, the defense never made any claim to the jury that Thompson viewed the encounter between defendant and JH and could discount JH's version of events. Instead, it was the *prosecution's witness* JH who made the claim that Thompson was present and viewed, at least part of, the encounter. Thus, this situation is more akin to *People v Shannon*, 88 Mich App 138, 142; 276 NW2d 546 (1979), where the defendant did not testify at trial, and it was erroneous for the jury to consider that defendant failed to produce an alibi witness. As the *Shannon* Court stated, "At issue is the jury's ability to draw an impermissible inference of guilt from defendant's decision not to call [a] witness and its relation to his involvement in the charged crime. A jury is left with the impression that by defendant's unsuccessful attempt to [produce the witness], guilt is rendered more presumable and apparent." *Id.* Although *Shannon* dealt with the failure to call alibi witnesses, the underpinning of its holding nevertheless is applicable here.

## III. RIGHT TO CONFRONTATION

Defendant argues that the trial court violated his Confrontation Clause rights by admitting into evidence JH's sexual assault nurse examiner (SANE) report. We disagree. Defendant failed to raise a Confrontation Clause claim at the trial court. Accordingly, we review this unpreserved constitutional issue for plain error affecting defendant's substantial rights. *People v Putman*, 309 Mich App 240, 245-246; 870 NW2d 593 (2015).

Defendant is not entitled to a new trial based on his Confrontation Clause claim. He appears to conflate two potential Confrontation Clause issues. First, he argues that statements made by JH to the SANE, specifically that defendant threatened to get a gun during the assault, amounted to testimonial hearsay. Then, defendant asserts that, because the SANE report was admitted into evidence through Amanda Taylor, who did not examine JH or prepare the report, the court violated defendant's Confrontation Clause rights. Specifically, he contends that defense counsel could not cross-examine the report's author regarding whether JH's lack of injuries, as stated in the report, called into question her story, or how any threat of a weapon could have been relevant to JH's medical diagnosis.

The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI; *People v Buie*, 285 Mich App 401, 407-408; 775 NW2d 817 (2009). The Confrontation Clause applies not only to in-court testimony, but also to out-of-court statements introduced at trial. *Crawford v Washington*, 541 US 36, 50-51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Even then, only out-of-court statements that are *testimonial* implicate the Confrontation Clause. *Id.* at 50-52; *People v Taylor*, 482 Mich 368, 377; 759 NW2d 361 (2008). Furthermore, the Confrontation Clause bars the admission of these out-of-court testimonial statements only when the declarant is unavailable to testify and where defendant did not have a prior opportunity to cross-examine the declarant. *Crawford*, 541 US at 59, 68.

Here, we need not determine whether statements made by JH to the nurse and reflected in the SANE report amounted to testimonial hearsay because the declarant of those statements, JH, testified at trial and was available for cross-examination. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n 9. Accordingly, there can be no Confrontation Clause issue regarding any out-of-court statements JH made.

Defendant also appears to argue that the observations or conclusions made by the examining nurse and contained in the SANE report are testimonial. Thus, he claims that the court's admission of the report violated his Confrontation Clause rights because he could not cross-examine the report's author regarding the reliability of those observations and conclusions. Assuming without deciding that the *author's* statements in the report were indeed testimonial because these out-of-court statements "would be available for use at a later trial," *Id.* at 52; see also *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006); *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009), defendant fails to show how this potential Confrontation Clause violation could have affected the outcome of trial. On the contrary, the conclusions and observations of the report appear to benefit defendant. While the prosecutor

relied on JH's *other* admitted medical records that indicated that she suffered bruising on her wrist (to corroborate JH's testimony that defendant constrained her during their encounter), Taylor testified that the SANE report noted that, after a thorough "head to toe" examination, JH exhibited "no injuries." Thus, the observations in the SANE report did not tend to show that the sex between defendant and JH was forced or coerced, which was the dispositive question at trial. Therefore, to the extent that any of the nurse's own observations and conclusions, as noted in the report, was testimonial and admitted in violation of the Confrontation Clause, defendant has failed to establish how any error affected his substantial rights.[4]

## IV. SENTENCING

Defendant also raises several sentencing issues. However, because of our decision to remand for a new trial based on the prosecutor's comments, these issues are moot, and we decline to address them. See *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994).

We reverse and remand for a new trial. We do not retain jurisdiction.


/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Kelly

---

[4] Defendant again primarily relies on the statements in the report that defendant purportedly threatened JH that he was going to get a gun. But, as already discussed, the constitutional admissibility of those statements is dependent upon the JH's availability to testify, not the nurse who simply scribed JH's statements to the report.