# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DIONTE DESHAUN CLINGMAN,

        Defendant-Appellant.

UNPUBLISHED
July 24, 2018

No. 334806
Macomb Circuit Court
LC No. 2016-000099-FC

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520b(1)(a). The trial court sentenced defendant to 300 to 744 months in prison for each CSC-I conviction, and 120 to 180 months in prison for each CSC-II conviction, to be served concurrently. We affirm.

Defendant was convicted of sexually abusing his cousin, who was under 13 years of age at the time of these offenses. Defendant began living in his aunt's home when he was 19 years old and the victim was 10 years old. The victim initially was excited when defendant moved in, but she later changed her attitude and told her mother that she wished he would move out. In November 2015, when the victim was 12, she disclosed that defendant had been sexually abusing her for more than a year. The next day, her mother took the victim to the police, and also to a hospital to be examined. No physical evidence of sexual abuse was discovered during the victim's medical examination, as is often the case. The prosecution's evidence against defendant consisted primarily of the victim's accounts of multiple sexual acts committed by defendant. The defense challenged the victim's credibility and also presented an alibi defense for one of the charged incidents, which allegedly occurred on Father's Day.

Defendant first argues that he was denied a fair trial because of the introduction of numerous hearsay statements by the victim. Because defendant did not raise a hearsay objection to any of the challenged testimony at trial, his claims are unpreserved and we review this issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant alternatively argues that defense counsel was ineffective for not objecting to the challenged testimony. Because defendant did not raise a claim of ineffective assistance of counsel in a motion for a new trial or request for an evidentiary hearing

-1-

in the trial court, review of that claim is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied his right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish prejudice, defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

Defendant challenges the introduction of testimony concerning the victim's conversations with three persons—her mother, Dr. Alex Varma, and Heather Solomon. Defendant maintains that this testimony resulted in the introduction of inadmissible hearsay. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible unless it falls under an exception to the hearsay rule. MRE 802. If an out-of-court statement is offered for a purpose other than to prove the truth of the matter asserted, then, by definition, it is not hearsay. *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). Thus, when a statement is offered not for its truth, but to show why certain action was taken, it is not hearsay. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

We agree with the prosecution that the challenged testimony of the victim's mother did not involve hearsay because the victim's mother did not reveal the actual content of the victim's statements. The prosecutor merely elicited testimony explaining the victim's mother's conduct in response to statements by the victim, which were undisclosed to the jury. During the challenged questioning, the prosecutor was careful to not ask the victim's mother to repeat any actual statements made by the victim, and the prosecutor repeatedly prefaced her questions with statements such as: "You're not allowed to tell me what the person told you," "Without telling me what [the victim] said to you . . . ," "and again without telling me the content of the conversation . . . " To the extent that the testimony revealed that the victim had made various undisclosed statements to her mother, the purpose of the testimony was to explain the actions that the victim's mother took in response to these statements. The only testimony that revealed the actual content of any statement by the victim was testimony that the victim's mother heard the victim tell the examining doctor that she had been molested by her cousin. As discussed later, that statement was admissible under MRE 803(4), the hearsay exception for statements made for the purpose of medical treatment or diagnosis. Accordingly, defendant has not shown any plain error with respect to the testimony offered by the victim's mother.

Defendant challenges the testimony of Dr. Varma that the victim was brought to the hospital emergency room "[f]or allegedly sexual assault," that the victim reported that the sexual assaults had "been going on for quite a few months," and that the victim told a resident physician that the person who assaulted her was her cousin. We disagree with defendant's argument that these statements were inadmissible hearsay.

MRE 803(4) establishes the following exception to the general prohibition against hearsay:

Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

In *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011), this Court held that statements made to a nurse performing a rape examination were admissible under MRE 803(4). This Court stated:

Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care. This is true irrespective of whether the declarant sustained any immediately apparent physical injury. *People v Garland*, 286 Mich App 1, 8-10; 777 NW2d 732 (2009). Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. *Id*. at 9-10; *People v McElhaney*, 215 Mich App 269, 282-283; 545 NW2d 18 (1996). Thus, statements the victim made to the nurse were all properly admissible pursuant to MRE 803(4).

The statements made by the victim to Dr. Varma or the resident qualify as statements made for the purpose of medical treatment or diagnosis. The examination was performed one day after the victim disclosed the abuse. Even though the victim did not have any obvious physical injuries, the examination was still necessary to determine her need for medical care or treatment related to sexually transmitted disease, psychological harm, or possible pregnancy. The nature of the allegations, the frequency of their occurrence, and the identity of the perpetrator were all medically relevant to determine the type of examination and course of treatment that were appropriate. *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014); *Mahone*, 294 Mich App at 214-215. The fact that an examination was initiated in part by law enforcement is not dispositive of whether statements made during the examination were made for medical purposes. *Duenaz*, 306 Mich App at 96. Because the victim's statements regarding the frequency of the sexual abuse and the identity of the abuser were relevant to assessing her need to be treated for pregnancy or sexually transmitted disease, or for other treatment, including counseling, and to assess the risk of future abuse if returning to an abusive home, and because statements related to those purposes are admissible under MRE 803(4), defendant has not established that admission of the statements constituted plain error.

Defendant argues that some of Dr. Varma's testimony involved hearsay within hearsay, which is not admissible unless each level of hearsay satisfies a viable exception to the hearsay rule. MRE 805; *People v Hawkins*, 114 Mich App 714, 719; 319 NW2d 644 (1982). Although some of Dr. Varma's testimony involved observations made by the resident physician who interviewed and examined the victim, Dr. Varma's testimony was based on the medical records regarding that examination and interview. Medical records are admissible under the exception

for records of regularly conducted activities, MRE 803(6), and the statements attributed to the victim in those records fall within the hearsay exception for statements made for purpose of medical treatment, MRE 803(4). Again, therefore, defendant has not shown plain error.

Defendant also challenges the testimony of Heather Solomon, a forensic interviewer at Care House of Macomb County. Solomon explained that she learned from law enforcement that the interview was requested because the victim had alleged that "her cousin had put his penis inside of her vagina and mouth." While this testimony referred to out-of-court statements from two sources (i.e., what the victim had alleged, and what law enforcement had reported), it too was not offered for the truth of the matter asserted (i.e., to prove that the victim's "cousin had put his penis inside of [the victim's] vagina and mouth"), but only to explain why Solomon was conducting the interview. Therefore, the testimony was not hearsay, MRE 801(c). Solomon also provided testimony regarding her impressions of the victim's understanding of sexual matters, and her demeanor and conduct in responding to questions during the interview. However, Solomon did not convey any actual statements by the victim during these portions of her testimony. Accordingly, there was no plain error.

In sum, the record discloses that the challenged testimony either did not reveal the actual content of any statements by the victim, the testimony was not introduced for the purpose of proving the truth of the matters asserted, or the testimony was admissible under an exception to the hearsay rule. For these reasons, the challenged testimony was not inadmissible hearsay. Because any hearsay objection would have been futile, and defense counsel is not required to make a futile objection, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), counsel was not ineffective for failing to object to the testimony.

Defendant next argues that the evidence was insufficient to support his convictions. We disagree. An appellate court's review of the sufficiency of the evidence to sustain a conviction does not turn on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court must view the evidence in a light most favorable to the prosecution. *Id*. at 514-515. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

Defendant was convicted of four counts of CSC-I, contrary to MCL 750.520b(1)(a), which prohibits a person from engaging in sexual penetration with another person under the age of 13. *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016). Defendant was also convicted of three counts of CSC-II, contrary to MCL 750.520c(1)(a), which prohibits a person from engaging in sexual contact with another person under the age of 13. *People v Hallak*, 310 Mich App 555, 564; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016). Defendant does not dispute that the victim's testimony, if believed, was sufficient to establish that he engaged in four acts of sexual penetration with the victim, and three acts of sexual conduct with the victim, all while she was under the age of 13. Defendant's sole argument is that the victim's testimony was not credible. Although defendant provides a list of reasons why the

victim's testimony was not worthy of belief, the credibility of the victim's testimony was for the jury to resolve. This Court will not interfere with the jury's role in determining the credibility of witnesses. *Williams*, 268 Mich App at 419. Moreover, "[i]t is a well-established rule that a jury may convict on the uncorroborated evidence of a CSC victim." *People v Lemmon*, 456 Mich 625, 642-643 n 22; 576 NW2d 129 (1998); MCL 750.520h. Viewed in a light most favorable to the prosecution, the victim's testimony was sufficient to establish defendant's guilt of four counts of CSC-I and three counts of CSC-II beyond a reasonable doubt.

Defendant next argues that the trial court erred in denying his motion for an adjournment of trial. Defendant moved for an adjournment the day before trial because he had not received, among other items, a transcript of the victim's Care House interview and a copy of the victim's diary. At a hearing held on the same day as the commencement of the trial, the prosecutor stated that most of those items had already been turned over in discovery, but that she had only obtained a copy of the transcript and given it to defense counsel on the morning of the first day of trial. The prosecutor informed the court that the transcript was less than 20 pages in length, and that she did not intend to call the victim until the next day. The prosecutor also indicated that the two pages of the victim's diary already turned over in discovery were the only pages in the journal that contained writing. The prosecutor promised to deliver the entire journal to the courtroom to show defense counsel that the other pages were blank. The trial court denied the motion to adjourn because defense counsel had sufficient time to review the transcript before the victim testified. We review a trial court's decision denying a motion for an adjournment for an abuse of discretion. *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Bass*, 317 Mich App 241, 256; 893 NW2d 140 (2016).

Assuming defendant made a proper discovery demand, regardless of the prosecutor's usual procedures or whether the prosecutor had herself seen a copy, the prosecution was required under MCR 6.201(A)(2) to acquire a copy of the victim's Care House interview transcript and turn it over to defendant, because the transcript contained "any written or recorded statement" by a lay witness whom the prosecution intended to, and actually did, call at trial. The prosecution would be obligated to find and turn over the transcript even if the prosecutor was unaware of its existence. See *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995) (stating that the government is held responsible for the evidence in its control even if the prosecutor is unaware of the evidence). However, we have not been able to locate a copy of any discovery demand in the record. Based on the prosecutor's statements, we infer that the prosecutor did in fact receive a discovery demand; however, as a court of record, we are unable to make that determination with certainty. Because the diary was never mentioned as an issue again, we presume its completeness was resolved to defendant's satisfaction.

Pursuant to MCR 2.503(B)(1) and (D)(1),[1] defendant was required to show good cause for an adjournment, and show that justice required an adjournment. Defendant did not make this

---

[1] The rules of civil procedure apply to criminal cases governed by MCR 6.100 *et seq.*, unless prohibited by rule or statute, it clearly appears that a given rule applies only to civil proceedings, or a statute provides a like or different procedure. MCR 6.001(D).

requisite showing. Defendant was provided with a transcript of the victim's Care House interview on the morning before trial started. Although counsel stated that he needed time to review the transcript to prepare for cross-examination, the transcript was less than 20 pages in length and the victim was not scheduled to testify until the next day. As the trial court noted, defense counsel had cross-examined the victim previously, so he was familiar with her prior testimony. Because counsel was familiar with the victim's testimony, the Care House interview transcript was less than 20 pages in length, and the victim was not scheduled to testify until the next day, it was reasonable for the court to believe that defense counsel would have sufficient time to review the transcript to prepare for cross-examination. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for an adjournment.

Next, defendant argues that the trial court erred by excluding photographs of the victim obtained from her social media accounts. A trial court's decision whether to admit or exclude evidence is reviewed for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.*

Initially, the record discloses that defendant was permitted to introduce one of the photographs of the victim. During defense counsel's cross-examination of the victim's mother, counsel elicited that the victim had attended a homecoming event at school in 2015. Defendant was permitted to offer into evidence a photograph of the victim, her older sister, and her parents on that occasion.

When defense counsel was cross-examining the victim, counsel sought to introduce additional photographs of the victim obtained from her social media accounts. Following an objection and arguments by the parties, the trial court excluded the photos as irrelevant. Defendant argues that the photographs were relevant to impeach testimony that the victim had become more withdrawn and introverted after the sexual assaults. Evidence is generally admissible if it is relevant, whereas evidence that is not relevant is not admissible. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even if evidence is relevant, it may be excluded if it is misleading or would involve a waste of time or needless presentation of cumulative evidence. MRE 403.

We disagree with defendant's argument that the additional photographs were relevant to impeach the victim's or her mother's testimony that the victim had become more introverted or withdrawn since the sexual assaults. Neither the victim nor her mother claimed that the victim totally withdrew from social or public activities after the charged sexual assaults. They only testified that she had become more withdrawn than she had been previously. The photographs were not probative of whether there had been any change in the victim's demeanor or character since the charged assaults. Moreover, as noted earlier, the court allowed defendant to admit the photograph of the victim with her family before she attended a homecoming event. Although the relevancy and probative value of that photograph is questionable, defendant was allowed to introduce it as an exhibit, so he cannot now claim that he was deprived of the opportunity to use it for whatever value it had to impeach the victim's and her mother's testimony about the victim becoming more shy and introverted after the charged assaults.

As for the remaining photographs, one appears to be a photo of the victim with her siblings, again wearing the same dress she wore to the homecoming event. To the extent it had any probative value, because it was cumulative to the photo that had already been admitted, it was within the trial court's discretion to exclude it under MRE 403. The other photographs are photos of only the victim, one showing her in a white lace dress and two involving separate views of the victim in a black dress. None of these photos show the victim socially interacting with others. The photos of the isolated victim did not have any tendency to make it more or less probable that there had been a change in the victim's demeanor or character to seek attention since the charged assaults. Accordingly, the trial court did not abuse its discretion by excluding the photos.

Defendant argues that resentencing is required because the trial court erred by assessing 50 points when scoring offense variable (OV) 13 of the sentencing guidelines. We disagree. A trial court's scoring decision must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). This Court reviews the trial court's factual determinations for clear error. *Id.* "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

A trial court is required to score 50 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). The court may consider "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). However, the court is prohibited from scoring conduct used to score OV 11 or OV 12. MCL 777.43(2)(c).

Defendant argues that OV 13 was improperly scored because, although he was convicted of four counts of CSC-I, two of those convictions were used to score OV 11, leaving only two convictions available to score OV 13. However, the trial court was permitted to also consider conduct that did not result in a conviction when scoring OV 13. MCL 777.43(2)(a). Testimony at trial indicated that defendant committed additional CSC-I offenses for which he was not charged or convicted. The victim told the police that defendant had intercourse with her as many as 50 times. Accordingly, defendant has not shown that OV 13 was erroneously scored.

Furthermore, even if OV 13 was improperly scored, defendant would not be entitled to resentencing because he received a mandatory minimum sentence of 25 years, pursuant to MCL 750.520b(2)(b). The trial court had discretion to impose a greater sentence, but it had no discretion to impose a lesser sentence. See MCL 769.34(2)(a). Because the trial court did not exceed the mandated 25-year minimum term, and had no discretion to impose a lesser sentence, any error would not require resentencing.

In his final issue, defendant challenges the constitutionality of MCL 750.520b(2)(b), which required the trial court to impose a mandatory minimum sentence of 25 years where the victim was under the age of 13 years and the offender was 17 years or older. Defendant argues that this mandatory penalty amounts to both cruel and unusual punishment in violation of US Const, Am VIII (prohibiting "cruel *and* unusual punishment"), and Const 1963, art 1, § 16 (prohibiting "cruel *or* unusual punishment"). As defendant acknowledges, this Court considered

and rejected this argument in *People v Benton*, 294 Mich App 191, 204-207; 817 NW2d 599 (2011), which we are required to follow. Accordingly, we affirm defendant's sentences.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause